IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CURTIS B. PEARSON MUSIC COMPANY, CURTIS B. PEARSON and ROBERT C. PEARSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:04CV378 |
| McFADYEN MUSIC, INC., BROOK MAYS MUSIC COMPANY, and WILLIAM S. EVERITT, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendants' Motion to Transfer [Document #4], seeking to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) based on a forum-selection clause contained in the contract between the parties. However, for the reasons discussed below, the Court finds that the consideration of the factors contained in 28 U.S.C. § 1404(a) strongly supports venue in this Court, and that enforcement of the forum-selection clause would be unreasonable in this case. Therefore, Defendants' Motion to Transfer [Document #4] will be denied.

I.  FACTUAL BACKGROUND

Plaintiff Curtis B. Pearson ("Mr. Pearson") is a North Carolina citizen who served as president of the Curtis B. Pearson Music Company ("Pearson Music"), a North Carolina corporation that owned and operated a retail music store in Durham, North Carolina. In August

2000, Mr. Pearson and Pearson Music agreed to sell the music store to Defendant McFadyen Music, Inc. ("McFadyen Music"), a North Carolina corporation with its principal office and place of business in Cumberland County, North Carolina. The closing of the transaction occurred in Durham, North Carolina on August 7, 2000.

Prior to the closing, Defendant McFadyen Music, through its attorney, sent two preliminary drafts of the purchase agreement to Mr. Pearson for his review. Mr. Pearson made minor changes to the first draft and approved the second draft. According to Plaintiffs, Mr. Pearson was assured that the second draft would be the agreement presented at closing. Defendant William S. Everitt, acting as president of McFadyen Music, came to Durham for the closing on August 7, 2000, and presented the contract for execution. According to Plaintiffs, Defendant Everitt stated that the contract to be signed was the same as the version that had been negotiated and approved. The contract was signed at the closing by all of the Plaintiffs and by Defendant Everitt for McFadyen Music.

However, Plaintiffs contend that unbeknownst to them, the final agreement that was presented by Defendants at closing contained substantially different requirements which Defendants did not disclose to Plaintiffs at the time of closing. According to Plaintiffs, the first two drafts of the agreement, which were approved by Mr. Pearson, required Defendants to make installment payments for the purchase of the music store over a five-year term. The drafts approved by Mr. Pearson also contained a basic non-compete clause requiring that Plaintiffs not compete with Defendants for that five-year term. However, the final agreement presented at closing added a new requirement that made all payments contingent on Mr. Pearson and his son Robert Pearson continuing to be employed by Defendants for the five-year term. Plaintiffs contend that they were

2

not aware of the additional requirement, and that Defendants deceptively inserted it into the final contract without informing Plaintiffs of the change.

Mr. Pearson and his son did continue to work at the music store until 2002, and were paid salaries and commissions as "at will" employees. During that time, Defendants made the annual installment payments required under the contract. However, Plaintiffs contend that Mr. Pearson's and his son's sales territory was gradually reduced. In 2002, Defendants informed Mr. Pearson that they considered him to have "resigned," and Defendants refused to make their annual installment payment for 2002. Plaintiffs contend that it was only then that they become aware of the provision that had been added to the final version of the contract. Plaintiffs contend that the agreement itself is the result of fraud because Defendants fraudulently and deceptively added new requirements to the final version of the agreement, without disclosing those changes to Plaintiffs.

Plaintiffs brought suit in North Carolina Superior Court in Durham County, and Defendants removed to this Court on the basis of diversity jurisdiction. As noted above, Defendant McFadyen Music was a party to the agreement and was a North Carolina corporation, which would indicate a lack of complete diversity. However, in 2001, McFadyen Music was merged into Brook Mays Music Company, a Texas corporation with its principal place of business in Texas. As a result of this corporate restructuring, the parties agree that this Court has jurisdiction and that venue is proper in this Court.

However, Defendants have moved to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). In this regard, the parties do not dispute that the various drafts of the agreement contained a forum-selection clause providing that "[i]f any action is brought to enforce or interpret this Agreement, venue for such action shall be in

Dallas, Texas." (Pl.'s Ex. 3 at Section 9.09.) Defendants contend that based on this clause, this case must be transferred to Federal District Court in Texas. However, Plaintiffs contend that the forum-selection clause should not apply to their fraud claims, which are based in tort law rather than contract law. Plaintiffs also contend that the forum-selection clause is invalid because it was the product of fraud and overreaching. Finally, Plaintiffs contend that enforcement of the forum-selection clause is unreasonable in this case, because all of the relevant factors favor retaining venue in this Court.

## II. STANDARD OF REVIEW

Defendants' Motion to Transfer is brought pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The parties do not dispute that this case could have been brought in the United States District Court for the Northern District of Texas. Since venue would be proper in either court, in considering a motion to transfer under 28 U.S.C. § 1404(a), the following discretionary factors should be considered by the Court:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Brown v. Flowers, 297 F. Supp. 2d 846, 850 (M.D.N.C. 2003); Plant Genetic Sys., N.V. v. Ciba

Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996); Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989).

Generally, the burden is on the moving party to show that these factors favor transferring the case. However, where a valid forum-selection clause exists, that clause must be considered in weighing the relevant factors, and the burden of persuasion shifts to the party opposing enforcement of the forum-selection clause. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988); Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999). Once the burden shifts, in order to avoid transfer the plaintiff must demonstrate that enforcing the clause would be unreasonable and unjust. Forum-selection clauses may be considered unreasonable if "(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996).

In essence, based on these standards and the contentions of the parties in this case, the Court must undertake the following analysis. First, the Court must consider whether the forum-selection clause applies to the claims in this case. Second, if the clause applies, the Court must consider whether the forum-selection clause was the result of fraud or overreaching. If the clause itself was the result fraud or overreaching, the clause is not valid. Finally, if the forum-selection clause is valid and applicable in this case, the Court must determine whether the forum-selection clause is unreasonable. In order to establish that the clause is unreasonable, Plaintiffs bear the burden of establishing that the selected forum is gravely inconvenient or unfair, and that the balance of factors

5

in § 1404(a) outweighs the weight given to the forum-selection clause.

III.     ANALYSIS OF MOTION TO TRANSFER

    A.     Applicability of Forum-Selection Clause

The first step in the Court's evaluation of the Motion to Transfer is whether the forum-selection clause applies to the claims that have been brought by Plaintiffs in this case. The parties agree that the contract between them contains a mandatory forum-selection clause providing that "[i]f any action is brought to enforce or interpret this Agreement, venue for such action shall be in Dallas, Texas." (Pl.'s Ex. 3 at Section 9.09.). However, Plaintiffs contend that the clause should not apply in the present suit because they bring claims based in tort law, not involving interpretation or enforcement of the contract. In response, Defendants point out that Plaintiffs assert multiple contract claims in addition to the fraud and tort claims. The Court has considered the parties' contentions and the nature of the claims asserted. The Court finds that Plaintiffs bring both fraud and breach of contract claims, and that resolution of the claims involves analysis of the contract between the parties. In these circumstances, the forum-selection clause, if enforceable, would apply to both the contract claims and the related tort claims. See Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988); Berry v. Soul Circus, Inc., 189 F. Supp. 2d 290, 294 (D. Md. 2002); Lawler v. Schumacher Filters America, Inc., 832 F. Supp. 1044, 1051 (E.D. Va. 1993). Therefore, the Court concludes that the forum-selection clause in this case could be applied to all of the claims brought in this suit.

    B.     Validity of the Forum-Selection Clause Based on Alleged Fraud and Overreaching

The second step in evaluating the motion to transfer is to determine whether the forum-selection clause is the result of fraud or overreaching. Forum-selection clauses are presumptively

6

valid, but a forum-selection clause that is the result of fraud or overreaching is invalid and will not be enforced. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914-15, 32 L. Ed. 2d 513 (1972). In the present case, Plaintiffs contend that the forum-selection clause is invalid because it was the result of fraud. To show that the forum-selection clause is unreasonable based on fraud, Plaintiffs would need to show that the inclusion of the forum-selection clause itself was the product of fraud or coercion. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 2457 n.14, 41 L. Ed. 2d 270 (1974) ("[A] forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion."); Price v. Leasecomm Corp., No. 1:03CV685, 2004 WL 727028, at *4 (M.D.N.C. March 31, 2004)(noting that the Plaintiff must show that the inclusion of the forum-selection clause was the product of fraud or coercion). Thus, general allegations of fraud in the inducement to sign the agreement or fraud in the performance of the agreement are insufficient to establish fraud specifically as to the forum-selection clause. Here, Plaintiffs concede that the forum-selection clause itself was not the result of fraud, because the forum-selection clause was included in all of the drafts of the agreement, and Mr. Pearson was aware of the forum-selection clause before signing the final agreement. Therefore, the Court finds that Plaintiffs' general allegations of fraud, while substantial, are insufficient to establish fraud with respect to the forum-selection clause.

Plaintiffs also contend that the forum-selection clause was the result of "overreaching" because Plaintiffs were in an inferior bargaining position and because the clause was "boiler-plate." However, the Court notes that Mr. Pearson was an experienced businessman who gave the draft agreement to an attorney for review. Although Plaintiffs contend that the final version of the contract was different from the drafts they had reviewed, Plaintiffs concede that the forum-selection

7

clause was in all of the previous drafts. In these circumstances, the Court cannot conclude that inclusion of the forum-selection clause itself was the result of overreaching sufficient to invalidate the clause. Therefore, the Court concludes that the forum-selection clause is valid and applicable in this case, and the Court will turn to Plaintiffs' contention that enforcement of the forum-selection clause is nevertheless unreasonable.

   C. Unreasonableness of Forum-Selection Clause

As noted above, the final step in evaluating Defendants' Motion to Transfer is to determine whether enforcement of the forum-selection clause is unreasonable. A forum-selection clause may be unreasonable based on the "grave inconvenience or unfairness of the selected forum" or the "strong public policy of the forum state." Allen, 94 F.3d at 928. In determining the unreasonableness of a forum-selection clause based on inconvenience, unfairness, or the public policy of the forum state, courts often return to an analysis of the eleven factors normally considered in deciding a motion under 28 U.S.C. § 1404(a). See, e.g., Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569, 577 (M.D.N.C. 1999); James C. Greene Co. v. Great American E & S Ins. Co., 321 F. Supp. 2d 717, 721-22 (E.D.N.C. 2004); Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482, 485 (M.D.N.C. 1999).

In considering the § 1404(a) factors, the forum-selection clause "will be a significant factor that figures centrally in the district court's calculus." Stewart, 487 U.S. at 29, 108 S. Ct. at 2244. The forum-selection clause should "receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a)." Stewart, 487 U.S. at 31, 108 S. Ct. at 2245. The Court must consider "the fairness of transfer in light of the forum-selection clause." Id. at 29, 108 S. Ct. at 2245. In addition, the Court "must weigh in the balance the

8

convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" Id. at 30, 108 S. Ct. at 2244; see also Price, 2004 WL 727028, at *4 (noting that a determination of unreasonableness based on "grave inconvenience or unfairness" is "similar to a determination of whether a transfer of venue is in the interest of justice"). Plaintiffs bear the burden of establishing that the selected forum is gravely inconvenient or unfair, and that the balance of factors in § 1404(a) outweighs the significant weight given to the forum-selection clause.

In the present case, a consideration of these factors strongly supports venue in this Court. First, this case involves a contract between North Carolina corporations for the sale of an ongoing business in North Carolina. The contract was entered into in North Carolina and has been performed in North Carolina. Almost all of the witnesses are located in North Carolina, including Mr. Pearson, his son Robert Pearson, the other Pearson Music shareholder who was present at the closing, and the two employees of McFadyen Music in Fayetteville, North Carolina who were involved in the termination of Mr. Pearson's employment. The only potential witnesses who do not reside in North Carolina are Mr. Everitt, who was acting as President of McFadyen Music when he came to North Carolina to sign the agreement, and the lawyer who represented McFadyen Music in drafting the agreements. Although there may be other witnesses Defendants would desire to call, those witnesses would not appear to have any information related to the allegedly fraudulent formation of the contract in North Carolina. In sum, the ease of access to sources of proof and the convenience to the various witnesses would weigh strongly in favor of venue remaining in North Carolina. Cf. James C. Greene Co. v. Great American E & S Ins. Co., 321 F. Supp. 2d 717, 722 (E.D.N.C. 2004) (holding that where there was significant connection to North Carolina and little

or no connection to the designated forum, plaintiffs had shown that "the selected forum causes grave inconvenience").

Moreover, Mr. Pearson has submitted information establishing that his wife has been the victim of multiple strokes and requires his constant care. Because of her physical and emotional state, it would be exceedingly difficult for Mr. Pearson to pursue this suit in Texas. Defendants have offered to conduct the depositions of Mr. Pearson and his son on different dates so that they could arrange for care for Mrs. Pearson, but this certainly establishes practical problems that would indicate that a trial in Texas would not be easy, inexpensive or expeditious. The Court finds that these particular circumstances would weigh strongly in favor of retaining venue in this Court, and would indicate that enforcement of the forum-selection clause would be unreasonable and could deprive Mr. Pearson of his ability to pursue this litigation.

In addition, the state of North Carolina has expressed a strong interest in having local controversies settled at home. Specifically, N.C. Gen. Statute § 22B-3 provides that "except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." In this case, the contract was entered into in North Carolina between North Carolina entities related to the sale of an ongoing North Carolina business, and North Carolina would have a strong public policy in retaining venue in this state. The fact that North Carolina has such a policy is not dispositive, but a state's public policy toward forum-selection clauses should be a factor that federal courts use in determining venue transfer under § 1404(a). See Stewart, 487 U.S. at 31, 108 S. Ct. at 2245.

10

Finally, the Court notes that all of the alleged fraud in this case occurred in North Carolina, and would be governed by North Carolina law. See, e.g., United Dominion Indus., Inc. v. Overhead Door Corp., 762 F. Supp. 126, 128 (W.D.N.C. 1991) ("The contractual provision here may govern the choice of laws as to the interpretation and construction of the contract; however, it does not provide the applicable law for a claim based on unfair and deceptive acts."); ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 49 n.11 (4th Cir. 1983) (holding that claims under N.C. Gen. Stat. § 75-1.1 would be governed by North Carolina law without regard to the presence of the contractual choice of law provision). This Court has more experience than courts in Texas in applying North Carolina tort law, and it would be in the interest of judicial economy and convenience for this Court to evaluate these claims.

Having considered all of the § 1404(a) factors, the Court finds that the balance of the factors weighs strongly in favor of venue remaining with this Court. The only factor in favor of transferring this case is the choice of law provision itself. The presence of a forum-selection clause is a "significant factor" but is not dispositive and should receive "the consideration for which Congress provided in § 1404(a)." Stewart, 487 U.S. at 31, 108 S. Ct. at 2245. In this case, the Court has given the forum-selection clause significant weight in considering the relevant factors. However, the Court notes that the focus of all of the claims in this case involves substantial fraud that will be governed by North Carolina tort law, and the contract itself and the alleged torts have no connection to the state of Texas. In addition, the balance of § 1404(a) factors weighs heavily in favor of retaining this matter with this Court, and enforcement of the forum-selection clause would be unreasonable and would result in unnecessary inconvenience to the courts and the witnesses in this matter.

11

IV.     CONCLUSION

Based upon the facts before the Court and the findings made by the Court, the Court concludes that application of the forum-selection clause would be unreasonable and unjust in the present case. For these reasons, the Court in its discretion will deny Defendants' Motion to Transfer [Document #4].

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 3rd day of June, 2005.

_____
United States District Judge