IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CURTIS B. PEARSON MUSIC )
COMPANY, CURTIS B. PEARSON )
and ROBERT C. PEARSON, )
  )
       Plaintiffs, )
  )
v. ) 1:04CV378
  )
McFADYEN MUSIC, INC., BROOK )
MAYS MUSIC COMPANY, and )
WILLIAM S. EVERITT, )
  )
       Defendants. )

ORDER

BEATY, Chief District Judge.

    This matter is before the Court on Defendants' Motion for Partial Summary Judgment [Document #28]. Plaintiffs in this diversity suit bring state law claims for breach of contract, fraud, and unfair and deceptive trade practices. In their Motion for Partial Summary Judgment, Defendants seek judgment as a matter of law with respect to Plaintiffs' claims for fraud and unfair and deceptive trade practices. However, the Court has reviewed the submissions of the parties and finds that there are genuine issues of material fact with respect to Plaintiffs' claims for fraud and unfair and deceptive trade practices, as discussed below. Therefore, Defendants' Motion for Partial Summary Judgment [Document #28] will be denied.

I.     FACTUAL BACKGROUND

Prior to 2000, Plaintiff Curtis B. Pearson ("Mr. Pearson") served as president of the Curtis B. Pearson Music Company ("Pearson Music"), a North Carolina corporation that owned and operated retail music stores in North Carolina and South Carolina. In August 2000, Mr. Pearson met with Defendant William S. Everitt ("Mr. Everitt"), who was President of Defendant McFadyen Music, Inc. ("McFadyen Music"), and negotiated potential terms for the sale of Pearson Music to McFadyen Music. Prior to the closing of the deal, Defendant McFadyen Music, through its attorney, sent two preliminary drafts of the purchase agreement to Mr. Pearson for his review. Mr. Pearson made minor changes to the first draft and then asked an attorney to review the second draft, which was dated July 14, 2001 ("the July 14 draft"). After he and his attorney reviewed the July 14 draft, Mr. Pearson approved that draft, which he considered to be the "final draft." Mr. Pearson's son, Robert Pearson, also reviewed the drafts and approved the July 14 draft.

On August 7, 2000, Mr. Everitt, acting as president of McFadyen Music, came to Durham for the closing. According to Plaintiffs, the parties spent all day taking inventory, valuing assets, and handling internal details related to the transition. Plaintiffs contend that Mr. Everitt had the final agreement with him in his briefcase, and presented it for execution at approximately 10:00 p.m. that evening. According to Mr. Pearson, Mr. Everitt "made it clear it was the same one he sent me on July 14 that I had approved. I had given final approval

2

to the July 14 draft, and they told me that was the agreement Mr. Everitt would bring." (Pearson Aff. [Doc. #31, Ex. 1].) Mr. Pearson specifically contends that at the closing, Mr. Everitt stated that the contract that he presented to be signed was the same as the contract that had been negotiated and approved. (Pearson Dep. [Doc. #31, Ex. 3].) The contract was signed at the closing by all of the Plaintiffs and by Mr. Everitt for McFadyen Music.

However, Plaintiffs contend that unbeknownst to them, the final agreement that was presented by Defendants at closing contained substantially different requirements which Defendants did not disclose to Plaintiffs at the time of closing. According to Plaintiffs, the first two drafts of the agreement, which were approved by Mr. Pearson, required calculation of a sale price based on valuation of assets, receivables, and inventory on the actual day of closing, and also required Defendants to make installment payments totalling $500,000 to Mr. Pearson and $100,000 to Robert Pearson over a five-year term. The two drafts, including the July 14 draft approved by Mr. Pearson, also contained a basic non-compete clause requiring that Plaintiffs not compete with Defendants for that five-year term. However, the final agreement presented at closing added a new requirement that made all payments of Mr. Pearson's $500,000 and Robert Pearson's $100,000 contingent on Mr. Pearson and Robert Pearson continuing to be employed by Defendants for the five-year term. This new requirement was contained in a single sentence added in the middle of a subparagraph that was otherwise identical to the July 14 draft approved by Mr. Pearson. Plaintiffs contend that they

3

were not aware of the additional requirement, that they were not provided with a "redlined" version that Mr. Everitt had reflecting this change, and that Defendants deceptively inserted it into the final contract without informing Plaintiffs of the change, and then specifically misled Plaintiffs by stating that the agreement to be signed was the same as what had previously been negotiated and approved. In response, Defendants contend that this new provision was agreed to during prior negotiations and was inadvertently omitted from the two preliminary drafts, and that Mr. Everitt had no duty to inform Plaintiffs of the change he had made. However, Plaintiffs contend that such a provision was never previously discussed by the parties.

Mr. Pearson and his son did continue to work at the music store until 2002, and were paid salaries and commissions as "at will" employees. During that time, Defendants also made the annual installment payments required under the contract. However, Plaintiffs contend that Mr. Pearson's and his son's sales territory was gradually reduced. In 2002, Defendants informed Mr. Pearson that they considered him to have "resigned," and Defendants refused to make their annual installment payment for 2002 or for any year thereafter, leaving an alleged balance due of $400,000 as to Mr. Pearson and $60,000 as to Robert Pearson. Plaintiffs contend that it was only then that they become aware of the provision that had been added to the final version of the contract. Plaintiffs contend that the agreement itself is the result of fraud because Defendants fraudulently and deceptively added new requirements to the final

4

version of the agreement without disclosing those changes to Plaintiffs, and then affirmatively misled Plaintiffs into believing that the contract to be executed at closing was the same as the contract they had previously negotiated and approved. Based on these contentions, Plaintiffs brought this suit against Defendants alleging breach of contract, fraud, and unfair and deceptive trade practices.

II. MOTION FOR PARTIAL SUMMARY JUDGMENT

In their Motion for Partial Summary Judgment, Defendants contend that Plaintiffs' claims for fraud and unfair and deceptive trade practices must be dismissed based on the legal principle that a party to a contract is responsible for reading the contract, and will be bound by the provisions of the contract he signed. See, e.g., Isley v. Brown, 253 N.C. 791, 794, 117 S.E.2d 821, 824 (1961); Davis v. Davis, 256 N.C. 468, 471-72, 124 S.E.2d 130, 133 (1962) ("So one who contracts with another cannot ignore the contract merely because he becomes dissatisfied upon learning of the obligation assumed when, without excuse, he made no effort to ascertain the terms of the contract at the time he executed it."). However, it is also well established that an exception to this rule exists where the party exercises reasonable diligence and is induced to enter the contract by the fraudulent acts of the other party. See, e.g., Mills v. Lynch, 259 N.C. 359, 362, 130 S.E.2d 541, 544 (1963); Northwestern Bank v. Roseman, 81 N.C. App. 228, 344 S.E.2d 120 (1986); see also Davis, 256 N.C. at 472, 124 S.E.2d at 133.

In the present case, taking the evidence in the light most favorable to Plaintiffs, as is

5

appropriate on a Motion for Summary Judgment, the Court finds that Plaintiffs have presented a genuine issue of fact with respect to their claim of fraud by Defendant Everitt in the execution of the agreement, based on the alleged circumstances and Mr. Everitt's alleged representation that the agreement he presented at the closing was the same as the contract previously negotiated and approved by Plaintiffs, when in fact it contained an additional provision that had never been presented to or approved by Plaintiffs. Defendants contend that the disputed provision was discussed and negotiated, and was not "deceptively inserted" into the final agreement, but Plaintiffs flatly deny this assertion, creating a genuine issue of material fact on this issue. In addition, to the extent Defendants contend that Plaintiffs' reliance was unreasonable, the Court concludes that resolution of that issue is one for the jury. See Johnson v. Owens, 263 N.C. 754, 757, 140 S.E.2d 311, 313 (1965); Massey v. Duke Univ., 130 N.C. App. 461, 466, 503 S.E.2d 155, 159 (1998). Therefore, having reviewed the parties' submissions, the Court finds that Plaintiffs have presented genuine issues of material fact regarding whether they exercised reasonable diligence and whether they were fraudulently induced to enter into the agreement presented by Mr. Everitt at closing, which included previously undiscussed terms, in light of the circumstances of the case and based on the specific misrepresentation by Mr. Everitt that the agreement presented at the closing was the same as the contract previously agreed upon. Therefore, Defendants are not entitled to judgment as a matter of law with respect to Plaintiffs' claims for fraud and unfair and

deceptive trade practices.

In addition to these contentions, Defendants also contend that Plaintiffs' fraud claim is time-barred because Plaintiffs could have discovered the fraud sooner by reading the agreement earlier. However, as noted above, Plaintiffs have presented a genuine issue of fact regarding whether they exercised reasonable diligence and whether they reasonably relied on Mr. Everitt's representation that the final agreement was the same as the contract previously agreed upon, at least until Defendants attempted to enforce the allegedly fraudulent provision. Therefore, the Court finds that Plaintiffs have created a genuine issue of fact with respect to when the fraud should have been discovered in the exercise of reasonable diligence, precluding summary judgment on this basis.

### III. CONCLUSION

For the reasons discussed above, the Court concludes that there are genuine issues of material fact with respect to Plaintiffs' claims for fraud and unfair and deceptive trade practices, including whether Plaintiffs reasonably relied on fraudulent representations or actions by Defendants, and when Plaintiffs reasonably should have discovered the alleged fraud. These issues are therefore more appropriately resolved by a jury at the trial of this matter, currently scheduled for this Court's January 2007 Civil Trial Session.

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment [Document #28] is DENIED.

This, the 31st day of October, 2006.

　　　　　　　　　　　　　　　　　　　　　　　/s/ James A. Beaty
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge